**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
                                    )
NORTHERN AIR CARGO, et al.,         )
                                    )
          Plaintiffs,               )
                                    )
          v.                        )
                                    )
UNITED STATES POSTAL SERVICE,       )  Civil Action No. 10-2076 (EGS)
                                    )
          Defendant,                )
                                    )
          and                       )
                                    )
PENINSULA AIRWAYS, INC.,            )
                                    )
          Defendant-Intervenor.     )
                                    )
```

**MEMORANDUM OPINION**

On December 3, 2010, the United States Postal Service (the
"Postal Service") granted an equitable tender of nonpriority
mainline bypass mail to Peninsula Airways, Inc. ("PenAir") on
five mainline routes in rural Alaska pursuant to 39 U.S.C.
§ 5402(g)(5)(c) ("§ 5402(g)(5)(C)").  This equitable tender is
now being challenged by three mainline carriers – Northern Air
Cargo ("NAC"), Tatonduk Outfitters Ltd d/b/a Everts Air Cargo
("Everts"), and Lynden Air Cargo LLC ("Lynden") (collectively,
"plaintiffs").  Specifically, plaintiffs challenge the Postal
Service's purportedly *ultra vires* determination that PenAir had
satisfied the "Prior Service and Capacity Requirement" of 39
U.S.C. § 5402(g)(1)(A)(iv)(II) ("§ 5402(g)(1)(A)(iv)(II)") as of

December 3, 2010.[1]  Plaintiffs seek both declaratory and

injunctive relief.  *See generally* Compl.

Pending before the Court is plaintiffs' motion for summary

judgment, as well as the cross-motions for summary judgment filed

by Defendant Postal Service and Defendant-Intervenor PenAir

(collectively, "defendants").  Upon consideration of the motions,

the responses and replies thereto, the applicable law, the entire

record, and for the following reasons, the Court hereby **DENIES**

plaintiffs' motion for summary judgment and **GRANTS** defendants'

cross-motions for summary judgment.

I.    **BACKGROUND**

This is the second action that plaintiffs have filed with

respect to the Postal Service's purportedly unlawful tender of

nonpriority mainline bypass mail to PenAir in five rural Alaskan

communities.[2]  The first action, (hereinafter, the "2009

---

[1]    As discussed below, the Prior Service and Capacity
Requirement requires the Postal Service "in selecting carriers of
nonpriority bypass mail . . . [to] adhere to an equitable tender
policy . . . and [to], at a minimum, require that any such
carrier– . . . (iv) have provided scheduled service . . . between
2 points within the State of Alaska for at least 12 consecutive
months with aircraft– . . . (II) over 7,500 pounds payload
capacity before being selected as a carrier of nonpriority bypass
mail at the intra-Alaska mainline service mail rate."  39 U.S.C.
§ 5402(g)(1)(A)(iv)(II).

[2]    Readers are referred to the Memorandum Opinion issued
in *Northern Air Cargo v. United States Postal Service*, 741 F.
Supp. 2d 41 (D.D.C. 2010), for additional background information.
In addition, a lengthy discussion of the Intra-Alaska Bypass Mail
System and the Rural Service Improvement Act of 2002 (the "RSIA")
is also provided in that Memorandum Opinion.  *See id.* at 43-45.

Action"), challenged the Postal Service's August 2009 and
September 2009 determinations that PenAir was eligible for the
equitable tender of nonpriority mainline bypass mail on five
mainline routes:  Anchorage-Dillingham, Anchorage-King Salmon,
Anchorage-Aniak, Anchorage-McGrath, and Anchorage-Unalakleet.
*See Northern Air Cargo v. United States Postal Serv.*, 741 F.
Supp. 2d 41 (D.D.C. 2010) (hereinafter, *Northern Air Cargo I*);
*see also* Pls.' SMF ¶ 33.  On September 23, 2010, this Court
issued an opinion granting in part and denying in part the
parties' cross-motions for summary judgment.  *Northern Air Cargo
I*, 741 F. Supp. 2d 41.  The Court held, among other things, that
the Postal Service had exceeded its statutory authority in
determining that PenAir was not required to satisfy the Prior
Service and Capacity Requirement of § 5402(g)(1)(A)(iv)(II) in

_____

As discussed therein, "[i]n passing the RSIA, Congress affirmed
that '[a]s long as the Federal Government continues to own large
tracts of land within the State of Alaska which impede access to
isolated communities, it is in the best interest of the Postal
Service, the residents of Alaska and the United States' to:
(i) 'ensure that the Intra-Alaska Bypass Mail system remains
strong, viable, and affordable for the Postal Service';
(ii) 'ensure that residents of rural and isolated communities in
Alaska continue to have affordable, reliable, and safe passenger
service'; (iii) 'ensure that residents of rural and isolated
communities in Alaska continue to have affordable, reliable, and
safe nonmail freight service'; (iv) 'encourage that intra-Alaska
air carriers move toward safer, more secure, and more reliable
air transportation . . . where such operations are supported by
the needs of the community'; and (v) 'ensure that the
Intra-Alaska Bypass Mail system continues to be used to support
substantial passenger and nonmail freight service and to reduce
costs for the Postal Service.'" *Id.* at 44 (quoting Congressional
Findings, Pub. L. 107-206 § 3002(b)(12)).

order to be tendered nonpriority mainline bypass mail pursuant to § 5402(g)(5)(C).  *Id.* at 52-53.  The Court therefore enjoined the Postal Service from tendering nonpriority mainline bypass mail to PenAir until the airline satisfied the Prior Service and Capacity Requirement of the RSIA.  *See* Civil Action No. 09-2065, Order dated Sept. 23, 2010 at 2.[3]  Accordingly, on September 24, 2010, the Postal Service ceased tendering nonpriority mainline bypass mail to PenAir.  Pls.' SMF ¶ 36.

On October 12, 2010, PenAir submitted a request to the Postal Service under § 5402(g)(5)(C) to receive an equitable tender of nonpriority mainline bypass mail in the same five rural Alaskan markets that it had previously carried nonpriority mainline bypass mail: Dillingham, King Salmon, Aniak, McGrath, and Unalakleet.  Pls.' SMF ¶ 37.  By letter dated October 21, 2010, the Postal Service informed PenAir that it believed PenAir had satisfied the Prior Service and Capacity Requirement of

---

[3]    The Court's September 23, 2010 Order states, in relevant part: "In accordance with the Memorandum Opinion issued on this same day, it is hereby . . . **FURTHER ORDERED** and **DECLARED** that Defendant United States Postal Service (the 'Postal Service') exceeded its statutory authority in determining that Peninsula Airways, Inc. ('PenAir') was not required to satisfy the Prior Service and Capacity Requirement of 39 U.S.C. § 5402(g)(1)(A)(iv)(II) in order to be tendered nonpriority mainline bypass mail pursuant to 39 U.S.C. § 5402(g)(5)(C); and it is **FURTHER ORDERED** that the Postal Service is hereby **ENJOINED** from tendering nonpriority mainline bypass mail to PenAir until PenAir satisfies the Prior Service and Capacity Requirement of 39 U.S.C. § 5402(g)(1)(A)(iv)(II) as required by 39 U.S.C. § 5402(g)(5)(C) . . . ."").

§ 5402(g)(1)(A)(iv)(II) as required by § 5402(g)(5)(C) and was, therefore, eligible to receive nonpriority mainline bypass mail. Postal Service's SMF ¶ 30.  The letter also stated, however, that because "[t]he district court did not address whether PenAir should receive credit for the past 13 months in which it has been providing mainline service in Alaska . . . the actual tender of mail to PenAir may violate the court's injunction."  Postal Service Opp'n to Pls.' Mot. for Prelim. Inj., Attachment 1, Ex. B (hereinafter, "Postal Service Ex. B").  The Postal Service explained to PenAir that it needed clarification from the Court regarding whether its proposed equitable tender would violate the Court's injunction.  *See* Postal Service Ex. B ("[T]he Postal Service will immediately begin tendering mail to PenAir upon the occurrence of either of the following events: (1) the court lifts the injunction; [or] (2) PenAir obtains an appropriate clarification of (or modification to) the injunction, which, in the sole judgment of the Postal Service, makes it clear that tendering mail will not violate the court's injunction.").

Accordingly, on November 17, 2010, the Postal Service filed a motion pursuant to Federal Rule of Civil Procedure 60 seeking "clarification" as to whether it would be in violation of the Court's September 23, 2010 injunction if it tendered nonpriority mainline bypass mail to PenAir pursuant to the airline's October 12, 2010 application.  Postal Service's SMF ¶ 31; *see also* Civil

Action No. 09-2065, Docket No. 38. On December 2, 2010, the
Court denied the Postal Service's motion. The Court explained
that "the issue on which defendant seeks clarification - 'whether
PenAir should receive credit for the past 13 months during which
it has been providing mainline service to Alaskans' - [was] not
properly before the Court. Specifically, the Court [found] that
the issue presented by defendant would require the Court to
entertain new factual and legal issues beyond the scope of the
Court's Memorandum Opinion and Order." *See* Civil Action No. 09-
2065, Minute Order dated Dec. 2, 2010 (internal citations
omitted).

By letter dated December 3, 2010, the Postal Service
concluded that PenAir had satisfied the Prior Service and
Capacity Requirement and authorized the issuance of nonpriority
mainline bypass mail to PenAir on the five requested mainline
routes. *See* Postal Service Opp'n to Pls.' Mot. for Prelim. Inj.,
Attachment 1, Ex. F (hereinafter, "Postal Service Ex. F").[4]
Shortly thereafter, on December 6, 2010, the Postal Service began

_____

[4]    *See also* Postal Service Ex. F (discussing the Court's
December 2, 2010 Minute Order and stating "[w]e read that minute
order as meaning that the court's previous order was not meant to
rule one way or another on the issue of credit for the last 13
months, that the Postal Service is authorized to make eligibility
determinations (including whether PenAir should receive credit
for the past 13 months), and that tendering the mail would not
violate the injunction because the Postal Service has concluded
that the conditions governing the expiration of the injunction
have been satisfied").

tendering nonpriority mainline bypass mail to PenAir.  *See*

PenAir's SMF ¶ 22.[5]

On December 8, 2010, plaintiffs filed an emergency motion

for an order to show cause why the Postal Service should not be

found in contempt in the 2009 Action, arguing that the Postal

Service had violated the Court's injunction by resuming tender of

nonpriority mainline bypass mail to PenAir.  *See* Civil Action No.

09-2065, Docket No. 47.  On that same date, plaintiffs also filed

the instant action, in which it requested a temporary restraining

order and preliminary injunction.  The Court denied plaintiff's

request for emergency injunctive relief on December 23, 2010.

*See Northern Air Cargo v. United States Postal Serv.*, 756 F.

Supp. 2d 116 (D.D.C. 2010) (hereinafter, "*Northern Air Cargo

II*").  Thereafter, plaintiffs filed a motion for summary

judgment, and defendants filed cross-motions for summary

judgment.  These motions are now ripe for determination by the

Court.

---

[5]     *But see* Pls.' Response to PenAir's SMF ¶ 15
("Plaintiffs dispute the characterization in Paragraph 22 of
Intervenor's Factual Statement that the Postal Service 'began'
tendering Mainline Bypass Mail to PenAir on December 6, 2010.
Considering that the Postal Service previously tendered Mainline
Bypass Mail to PenAir for ten months during the pendency of the
2009 Lawsuit, it would be more accurate to say the Postal Service
*resumed* tendering Mainline Bypass Mail to PenAir on December 6,
2010.").

## II.   STANDARDS OF REVIEW

### A.   Summary Judgment

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The party seeking summary judgment bears the initial burden of demonstrating an absence of genuine issues of material fact. *Celotex*, 477 U.S. at 322.  In determining whether a genuine issue of material facts exists, the Court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986); *Keyes v. Dist. of Columbia*, 372 F.3d 434, 436 (D.C. Cir. 2004). Likewise, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed.  *St. Michael's Med. Ctr.*

*v. Sebelius*, 648 F. Supp. 2d 18, 25 (D.D.C. 2009) (citing *Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975)).

**B.  The Postal Service's Interpretation of the RSIA**

A challenge to an agency's construction of a statute that it administers is subject to the standard of review articulated in *Chevron U.S.A., Inc. v. NRDC*, *Inc.* 467 U.S. 837 (1984).  In assessing the validity of an agency's interpretation of a statute, the Court must first determine "whether Congress has directly spoken to the precise question at issue."  *Id.* at 842-43.  Courts "use 'traditional tools of statutory construction' to determine whether Congress has unambiguously expressed its intent," *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1319 (D.C. Cir. 1993), including an examination of the statute's text, structure, purpose, and legislative history.  *See Shays v. FEC*, 414 F.3d 76, 105 (D.C. Cir. 2005).  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Chevron*, 467 U.S. at 842-43.  If, however, "the statute is silent or ambiguous with respect to the specific issue," *id.* at 843, the court "must next determine the deference, if any, [it] owe[s] the agency's interpretation of the statute, *Mount Royal Joint Venture v. Kempthorne*, 477 F.3d 745, 754 (D.C. Cir. 2007) (citing *United States v. Mead Corp.*, 533 U.S. 218 (2001)).  "If the agency enunciates its interpretation through

9

notice-and-comment rule-making or formal adjudication, [courts] give the agency's interpretation *Chevron* deference." *Id.* "[U]nder *Chevron*, courts are bound to uphold an agency interpretation as long as it is reasonable – regardless whether there may be other reasonable, or even more reasonable, views." *Serono Labs.,* 158 F.3d at 1321. "On the other hand, if the agency enunciates its interpretation through informal action that lacks the force of law, [courts] accept the agency's interpretation only if it is persuasive." *Mount Royal Joint Venture*, 477 F.3d at 754 (citing *Mead*, 533 U.S. at 235); *see also Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (explaining that if *Chevron* deference is not appropriate, courts may still accord an informal agency determination some deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944); noting that *Skidmore* deference, however, is appropriate "only to the extent that those interpretations have the 'power to persuade'").

## III. ANALYSIS

As this Court previously explained, "[t]he merits of this case turn on whether the Postal Service properly determined, on December 3, 2010, that PenAir had satisfied the Prior Service and Capacity Requirement and was therefore an eligible mainline carrier under § 5402(g)(5)(C)." *Northern Air Cargo II*, 756 F. Supp. 2d at 116. Although the parties all agree that the plain language of the Prior Service and Capacity Requirement should

govern the Court's analysis of this case, the parties adopt markedly different interpretations of this purportedly plain language. Specifically, plaintiffs assert that "[t]he Postal Service's decision to tender Mainline Bypass Mail to PenAir contravenes the clear and unambiguous language of the Prior Service and Capacity Requirement, and is therefore *ultra vires*," Pls.' Mot. at 9, while defendants argue that "[t]he Postal Service's decision honors the plain language of the Prior Service and Capacity Requirement." PenAir's Mot. at 7; *see also* Postal Service's Mot. at 10 (arguing that PenAir had satisfied the "plain language of the RSIA" prior to receiving an equitable tender of nonpriority mainline bypass mail in December 2010).[6] It is these diametrically opposite positions that the Court must resolve. After careful consideration of the parties' arguments and the applicable law, the Court concludes, for the reasons discussed below, that the Postal Service did not exceed its statutory authority when it determined on December 3, 2010 that PenAir had satisfied the Prior Service and Capacity Requirement and was therefore an eligible mainline carrier under § 5402(g)(5)(C).

---

[6]     Defendants alternatively argue that the Postal Service's interpretation of the Prior Service and Capacity Requirement is "entirely reasonable and therefore entitled to deference," PenAir's Mot. at 17; plaintiffs, by contrast, contend that "[t]he Postal Service's interpretation of the Prior Service and Capacity Requirement is not 'persuasive' and is not entitled to any deference from this Court," Pls.' Mot. at 19.

**A.   The Plain Language of § 5402(g)(1)(A)(iv)(II)**

The Court's inquiry must begin with the plain language of the Prior Service and Capacity Requirement.  If the RSIA speaks "to the precise question at issue" then "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43.  As noted above, the parties agree that the plain language of the Prior Service and Capacity Requirement is dispositive.

The Prior Service and Capacity Requirement provides, in relevant part, that:

> The Postal Service, in selecting carriers of nonpriority bypass mail to any point served by more than 1 carrier in the State of Alaska, shall adhere to an equitable tender policy within a qualified group of carriers, in accordance with the regulations of the Postal Service, and shall, at a minimum, require that any such carrier– . . . (iv) have provided scheduled service with at least the number of scheduled noncontract flights each week established under subparagraph (B)(ii) between 2 points within the State of Alaska for at least 12 consecutive months with aircraft– . . . (II) over 7,500 pounds payload capacity before being selected as a carrier of nonpriority bypass mail at the intra-Alaska mainline service mail rate.

39 U.S.C. § 5402(g)(1)(A)(iv)(II).  The Court must decide, therefore, whether this statutory language "precisely" answers the question pending before the Court: whether the Postal Service properly determined that PenAir had satisfied this statutory provision when it authorized the airline to receive nonpriority

mainline bypass mail on the five rural Alaskan routes in December 2010.

Because it is undisputed that PenAir had been operating mainline passenger service for nearly 16 months at the time of the Postal Service's selection on December 3, 2010, the principal issue before the Court is whether the Postal Service, in determining that PenAir had satisfied § 5402(g)(1)(A)(iv)(II), impermissibly credited PenAir for the time during which it was unlawfully tendered nonpriority mainline bypass mail.

Plaintiffs' principal argument is that "[t]he plain language of the Prior Service and Capacity Requirement expressly mandates that a carrier must 'have provided' passenger service with large aircraft for twelve consecutive months 'before' being selected as a carrier of Mainline Bypass Mail." Pls.' Mot. at 1. Plaintiffs assert, therefore, that "[t]he Postal Service's determination that PenAir should receive credit for the ten-month period during which PenAir received unlawful tender effectively ignores both the past tense of the verb 'provide' and excises 'before' from the Prior Service and Capacity Requirement." Pls.' Mot. at 11; *see also* Pls.' Mot. at 13 ("The phrase 'having provided' expressly indicates that the twelve months of mainline flights must occur before the current selection. For the word 'before' to have any meaning - and thus not be rendered superfluous - it must be read as imposing the additional (and common sense)

limitation that carriers may not receive Mainline Bypass Mail revenue during the twelve-month qualification period."). Accordingly, plaintiffs' argue that the Postal Service's interpretation of § 5402(g)(1)(A)(iv)(II) must be rejected because it "violates a 'cardinal principle' of statutory construction that 'no clause, sentence, or word shall be superfluous, void, or insignificant.'" Pls.' Mot. at 11 (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)); *see also* Pls.' Reply at 5 ("The Postal Service ignores the clause 'before being selected as a carrier of nonpriority mainline bypass mail,' while PenAir's interpretation render the clause mere surplusage.").

Plaintiffs further argue that "[n]otwithstanding the plain language of the provision itself, other RSIA provisions demonstrate that Congress did not intend a prospective entrant, such as PenAir, to receive credit for a period during which it received an illegal (or unqualified) tender of Mainline Bypass Mail." Pls.' Mot. at 16. In support of this position, plaintiffs cite 39 U.S.C. § 5402(p)(3), which authorizes the Postal Service to waive the requirements of § 5402(g)(1)(A)(iv) "in extreme cases of lack of competition" if "absolutely necessary to meet the minimum needs of the community." 39 U.S.C. § 5402(p)(3).[7] This subsection further provides that "[t]he

---

[7] This provision, in its entirety, states as follows: "To ensure adequate competition among passenger carriers on a mainline route in the State of Alaska the Postal Service or the

receipt of waivers and subsequent operation of service on a city pair route under this subsection shall not be counted towards meeting the requirements of any part of this section for any other city pair route." *Id.* Plaintiffs argue that "[t]he fact that Congress specifically contemplated the possibility that the Postal Service might need to waive the Prior Service and Capacity Requirement . . . but nonetheless clarified that such waiver operations 'shall not be counted' towards the Prior Service and Capacity Requirement further demonstrates the absurdity of the Postal Service's and PenAir's position." Pls.' Mot. at 16-17.

Finally, plaintiffs argue that "PenAir cannot benefit from the erroneous statutory interpretation this Court rejected in the 2009 Lawsuit." Pls.' Mot. at 17. Citing cases in which courts have purportedly "refused to allow parties to benefit from *ultra vires* acts by an agency," plaintiffs assert that "the Postal

---

Secretary may waive the requirements of subsection (g)(1)(A)(iv), (g)(2)(E), (g)(4), or (g)(5), or any provision of subsection (h) if a 121 bush passenger carrier seeks tender of nonpriority bypass mail on a mainline route in the State of Alaska not served by a 121 mainline passenger carrier and the 121 bush passenger carrier provides substantial passenger service on the route. Waivers provided for under this paragraph shall be granted only in extreme cases of lack of competition and only to extent that are absolutely necessary to meet the minimum needs of the community. Waivers granted under this subsection shall cease to be valid once a qualified mainline passenger carrier begins providing service and seeks tender of nonpriority bypass mail in accordance with this section on the city pair route. The receipt of waivers and subsequent operation of service on a city pair route under this subsection shall not be counted towards meeting the requirements of any part of this section for any other city pair route." 39 U.S.C. § 5402(p)(3).

Service is without authority to credit PenAir for the ten months during which it received an unlawful tender of Mainline Bypass Mail." Pls.' Mot. at 17 (citing *Smith v. WMATA*, No. 95-0687, 1997 U.S. Dist. LEXIS 4504, at *28 (D.D.C. April 4, 1997); *Davis v. Moore*, 772 A.2d 204, 209-11 (D.C. 2001)); *see also* Pls.' Reply at 6-8 (arguing that "PenAir received millions of dollars in compensation for the unlawful tender of Mainline Bypass Mail, but it should not be permitted to count the months it received an unlawful tender of Mainline Bypass Mail towards satisfying the Prior Service and Capacity Requirement").

Defendants, by contrast, urge the Court to reject these arguments explaining that, pursuant to the plain language of the Prior Service and Capacity Requirement, "'in selecting carriers of nonpriority [mainline] bypass mail,' the Postal Service need only confirm that carriers have provided the requisite number of mainline flights 'for at least 12 consecutive months . . . before *being selected* as a [mainline] carrier.'" PenAir's Opp'n at 1 (quoting 39 U.S.C. § 5402(g)(1)(A)(iv)). According to defendants, therefore, whether the Postal Service complied with this statutory provision is "a simple counting exercise: Did the carrier actually fly a sufficient number of flights with mainline aircraft during the 12 months that immediately preceded the

Postal Service's selection?"  PenAir's Mot. at 1.[8]  Because it is

undisputed that PenAir operated more than 3000 mainline scheduled

flights for 16 consecutive months before the Postal Service

approved PenAir's request on December 3, 2010, defendants contend

that "[this] should be the end of the matter."  PenAir's Mot. at

1.

Defendants also argue that plaintiffs' interpretation of the

plain language of § 5402(g)(1)(A)(iv) must be rejected because it

"improperly reads additional requirements" into the statutory

provision.  Postal Service's Opp'n at 4.  In particular,

defendants urge the Court to reject plaintiffs' argument that the

word "before" "'must be read as imposing *the additional (and*

*common sense) limitation* that carriers may not receive Mainline

Bypass Mail revenue during the twelve-month qualification

period.'"  Postal Service's Opp'n at 5-6 (quoting Pls.' Mot. at

13) (emphasis added by Postal Service); *see also* PenAir's Opp'n

at 8-9.  Defendants assert that "[p]laintiffs cannot read the

'additional limitation' – that a carrier cannot carry *any* bypass

---

        [8]     *See also* PenAir's Reply at 4 ("The phrase 'in
selecting' is a present-tense construction that creates a
prospective command: It speaks to what the agency must do when
faced with new applications to carry that mail. . . . The phrase
'being selected' likewise looks to the present; it does not say
'before having been selected at some point in the past.'  By
using parallel constructions throughout § 5402(g)(1)(A) –
'selection' and 'selecting' – Congress left no doubt about the
point that the 12 months run backwards from: the date the carrier
is presently 'selected' by the agency.").

mail before being selected as a carrier of nonpriority bypass mail at an applicable intra-Alaska mainline service mail rate under Section (g)(5)(C) – into Section (g)(1)(A)(iv)(II) when the plain language does not provide for it." Postal Service's Opp'n at 6-7; *see also* Postal Service Opp'n at 6 ("[N]owhere does Section (g)(1)(A)(iv)(II) state that a carrier can *never* have carried *any* bypass mail before being selected as a carrier of nonpriority bypass mail at an applicable intra-Alaska mainline service mail rate. If anything, the RSIA is completely silent on this issue."[9]).

In addition, the Postal Service also maintains that "[c]ontrary to Plaintiffs' assertions, the Postal Service did not read out the words 'provide' or 'before' from the statute." Postal Service's Opp'n at 7. Instead, the agency explains that it "applied the plain language of the statute and determined that PenAir did *provide* service in aircraft with the appropriate capacity at least twice a week for 12 months *before* PenAir submitted its 2010 request for tender." Postal Service's Opp'n at 7.

---

[9]     As discussed below, defendants urge the Court, in the event that the Court determines that the RSIA is "silent" or "ambiguous" on the precise question at issue, *see Chevron*, 467 U.S. at 837, to defer to the Postal Service's decision to tender nonpriority mainline bypass mail to PenAir in December 2010 as a reasonable agency action, *see* Postal Service's Mot. at 10-12.

With respect to plaintiffs' argument regarding the waiver provision of § 5402(p)(3), defendants contend that "[s]ubsection (p)(3) demonstrates that Congress knew how to do what the Plaintiffs are asking this Court to do for it: revise the statute to carve out from the 12-month requirement a subset of flights that would otherwise qualify." PenAir's Opp'n at 10. Defendants further assert that it is not "any answer to say that Congress perhaps simply overlooked – or never anticipated – that it might need to expressly prohibit a subset of flights from the ordinary 12-month rule. That sort of argument seeks 'not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope.'" PenAir's Opp'n at 10-11 (quoting *Nat'l R.R. Passenger Corp. v. United States*, 431 F.3d 374, 378 (D.C. Cir. 2005)).

Finally, defendants maintain that plaintiffs' arguments protesting PenAir's ability to benefit from the Postal Service's erroneous statutory interpretation in the 2009 Action, have "absolutely nothing to do with plain language or statutory interpretation." PenAir's Opp'n at 13; *see also* PenAir's Opp'n at 13 (arguing that the cases cited by plaintiffs do not "remotely suggest[] that the Postal Service is precluded from acknowledging the indisputable fact that PenAir has flown for more than 12 consecutive months").

Having carefully considered the parties' arguments,[10] the Court concludes that the Postal Service's determination that PenAir had satisfied the Prior Service and Capacity Requirement as of December 3, 2010 is consistent with the plain language of

---

[10]    The Court will also note that each of the parties urges the Court to find that their interpretation of the "plain language" of the Prior Service and Capacity Requirement is consistent with the legislative history of the RSIA.  For instance, plaintiffs argue that "[t]he import of [§ 5402(g)(1)(A)(iv)(II)] is obvious: Congress wanted to ensure that any 'new' carriers first demonstrate their economic viability and sustained commitment to the rural Alaskan communities as a mainline carrier operating Large Aircraft *before* they collected any Mainline Bypass revenues."  Pls.' Mot. at 6; *see also* Pls.' Mot. at 22-23 (arguing that "market stability" was one of Congress's "primary concerns" in passing the RSIA).  The Postal Service, by contrast, contends that its decision to tender mail to PenAir "fits squarely within the purposes of the RSIA – that is, to provide residents in the five communities at issue with reliable passenger service on routes where no mainline passenger carrier had been serving their communities."  Postal Service's Mot. at 10.  The Postal Service further argues that: "As the Court acknowledged in the 2009 Lawsuit, one of the primary purposes of the RSIA was to provide Alaskans with affordable and reliable mail, passenger, and freight service. Plaintiffs' interpretation of Section (g)(5)(C), however, would prevent a qualified carrier from offering mail and passenger service to residents in the five communities at issue, while Plaintiffs provide *no passenger service*.  This is antithetical to the stated purposes of the RSIA."  Postal Service's Opp'n at 13 (internal citations omitted).  Because the history and policy considerations that underlie the RSIA support the positions of both plaintiffs and defendants, the Court's analysis focuses on the statutory text.  *See, e.g.*, *Lamie v. United States Trustee*, 540 U.S. 526, 540 (2004) ("These competing interpretations of the legislative history make it difficult to say with assurance whether petitioner or the Government lays better historical claim to the congressional intent. . . . These uncertainties illustrate the difficulty of relying on legislative history here and the advantage of our determination to rest our holding on the statutory text.").

§ 5402(g)(1)(A)(iv)(II).  Specifically, before the Postal Service
selected PenAir as a carrier of nonpriority mainline bypass mail
in December 2010, the Postal Service determined - pursuant to the
plain language of the Prior Service and Capacity Requirement -
that PenAir "ha[d] provided scheduled service with at least the
number of scheduled noncontract flights each week established
under subparagraph (B)(ii) between 2 points within the State of
Alaska for at least 12 consecutive months with aircraft- . . .
over 7,500 pounds payload capacity . . . ."  39 U.S.C.
§ 5402(g)(1)(A)(iv)(II).  The Court is simply not persuaded by
plaintiffs' argument that Congress intended, through its use of
the word "before," to impose "the additional . . . limitation
that carriers may not receive Mainline Bypass Mail revenue during
the twelve-month qualification period."  Pls.' Mot. at 13.  As
this Court previously recognized, courts "'must presume that a
legislature says in a statute what it means and means in a
statute what it says[.]'"  *Northern Air Cargo I*, 741 F. Supp. 2d
at 52 (quoting *Teva Pharm. Indus. v. Crawford*, 410 F.3d 51, 53
(D.C. Cir. 2005)).  While the Court finds it unlikely that
Congress anticipated the factual scenario presented in this case
- i.e., that a carrier would fulfill the requirements set forth
in § 5402(g)(1)(A)(iv)(II) while carrying mainline bypass mail
pursuant to an *ultra vires* tender by the Postal Service - this
does not change the fact that PenAir satisfied the plain language

21

of § 5402(g)(1)(A)(iv)(II) by operating the requisite number of mainline scheduled flights for more than 12 consecutive months before the Postal Service selected PenAir as an eligible mainline carrier on December 3, 2010.  And although it might have been wise for Congress to add the provision urged by plaintiffs, this Court is not at liberty to infer an additional statutory requirement where none exists.  *See Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004) (rejecting petitioner's argument that would have required the Court to "read an absent word into the statute"; explaining that such an argument "would result not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope" (internal quotation marks omitted)); *see also Joseph v. U.S. Civil Serv. Comm'n*, 554 F.2d 1140, 1155 (D.C. Cir. 1977) ("[Courts] cannot rewrite [a] statute for unforeseen circumstances.  That power belongs to the legislature alone.").

The Court concludes, therefore, that the Postal Service's interpretation of the RSIA accords with the plain, ordinary meaning of the language selected by Congress.  Accordingly, the Postal Service did not exceed its statutory authority when it selected PenAir to receive an equitable tender of nonpriority mainline bypass mail on the five rural Alaskan routes in December 2010.

**B.    The Postal Service's Interpretation of the RSIA**

"When the words of a statute are unambiguous[,] . . .
judicial inquiry is complete," *Teva Pharm.*, 410 F.3d at 53
(internal quotation marks omitted), and the court need not "reach
step two" of the *Chevron* framework.   *Id.*   Even if, however, the
Prior Service and Capacity Requirement were ambiguous with
regards to whether the Postal Service could credit PenAir for the
time during which it was unlawfully tendered nonpriority mainline
bypass mail, the Court concludes that the Postal Service's
determination that PenAir had satisfied the requirements of
§ 5402(g)(1)(A)(iv)(II) as of December 3, 2010 to be both
reasonable and persuasive in light of the goals of the RSIA,[11]
and entitled to some deference by this Court under either *Chevron*

---

[11]    *See* Postal Service's Reply at 7-8 (explaining that one
of the RSIA's goals is to "'ensure that residents of rural and
isolated communities in Alaska continue to have affordable,
reliable, and safe passenger service'"; stating that "[t]he
Postal Service's decision to tender mail to PenAir on December 6,
thus compensating a mainline passenger carrier through the
payment of bypass mail revenues for offering reliable passenger
service to communities that did not previously receive *any*
regular mainline passenger service, effectuates that purpose"
(quoting *Northern Air Cargo I*, 741 F. Supp. 2d at 44)); Postal
Service's Mot. at 10 (emphasizing that its decision to tender
nonpriority mainline bypass mail to PenAir in December 2010 "fits
squarely within the purposes of the RSIA - that is, to provide
residents in the five communities at issue with reliable
passenger service on routes where no mainline passenger carrier
had been serving their communities"); *see also generally supra*
n.2 (highlighting Congress's goals in passing the RSIA).

or *Skidmore*.[12]  *See City of Dania Beach v. FAA,* 628 F.3d 581, 586

(D.C. Cir. 2010) (finding that "some deference is due the

agency's interpretation under either *Chevron U.S.A. v. Natural*

*Resources Defense Council*, 467 U.S. 837 (1984), or *Skidmore v.*

*Swift & Co.*, 323 U.S. 134, 140(1944) . . . [but] we need not

_____

[12]     The Court is not persuaded by plaintiffs' argument that
the Postal Service's December 2010 decision is entitled to no
deference because it reflects "a total lack of deliberative
process."  Pls.' Mot. at 21 (internal quotation marks omitted).
The Court finds that this case is distinguishable from the 2009
Action, in which "the Court [was] left with no indication of who
the decision-makers were, what they considered, or how they
reached their decision."  *Northern Air Cargo I*, 741 F. Supp. 2d
at 52 n.13.  Specifically, in this case, "[n]umerous Postal
Service employees in the Commercial Air Operations group in the
Postal Service's Headquarters in Washington, D.C. and in the
Western Area [Distribution Networks Office], through multiple
discussions and in consultation with the Postal Service Law
Department, carefully considered the issues raised by PenAir's
request for tender, including the Plaintiffs' contention that
PenAir had not yet satisfied the Prior Service and Capacity
Requirement of section 5402(g)(1)(A)(iv)."  Postal Service Opp'n
to Pls.' Mot. for Prelim. Inj., Attachment 1, Declaration of
Steve Deaton (hereinafter, "Deaton Decl.") ¶ 8.  Following these
discussions, the Postal Service then determined - consistent with
the plain text of the statute - that "PenAir had satisfied the
Prior Service and Capacity Requirement . . . by flying a mainline
passenger aircraft between any two points within the state of
Alaska for at least 12 months, after reviewing the flight
schedules submitted to the Postal Service as well as data
provided electronically to the Postal Service by the Official
Airline Guide[.]"  Deaton Decl. ¶ 4.  Nor is the Court persuaded
that a June 25, 2001 letter from the Postal Service to Intra-
Alaska Air Carriers, involving the agency's interpretation of a
pre-RSIA version of the Prior Service and Capacity Requirement,
precludes the Court from deferring to the Postal Service's
decision in this action.  *See* Postal Service's Reply at 3 n.4
(arguing that any position expressed by the Postal Service before
the enactment of the RSIA is irrelevant to whether it properly
applied the Prior Service and Capacity Requirement contained in
the RSIA).

resolve which"); *see also, e.g.*, *Coal. of Battery Recyclers Ass'n v. EPA,* 604 F.3d 613, 625 (D.C. Cir. 2010) (concluding that even if the disputed statutory provision was ambiguous, the agency adopted a reasonable interpretation of the statute's requirements under *Chevron* step two and was therefore entitled to deference by the court); *Teva Pharms., USA, Inc. v. Leavitt*, 548 F.3d 103, 106 n.1 (D.C. Cir. 2008) (same).

## IV.  CONCLUSION

In sum, because the Postal Service's decision to tender nonpriority mainline bypass mail to PenAir in December 2010 on five rural Alaskan mainline routes comported with the plain language of the Prior Service and Capacity Requirement of § 5402(g)(1)(A)(iv)(II), and was reasonable and persuasive in light of the goals of the RSIA, the Court concludes that the Postal Service did not exceed the authority delegated to it by Congress.  Accordingly, for the foregoing reasons, the Court **DENIES** plaintiffs' motion for summary judgment and **GRANTS** defendants' cross-motions for summary judgment.  An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    EMMET G. SULLIVAN**
**            United States District Judge**
**            June 10, 2011**